# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD F. MCCLOSKEY and** | | |
| **ROSEMARIE K. MCCLOSKEY,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **NO. 05-1162** |
| | : | |
| **NOVASTAR MORTGAGE, INC.,** | : | |
| **Defendant.** | : | |

## MEMORANDUM AND ORDER

Stengel, J.                                                                August 21, 2007

In June 2003, NovaStar Mortgage, Inc. solicited Richard McCloskey and

Rosemarie McCloskey regarding the refinancing of the McCloskeys' mortgage on their

residence in Paoli, Pennsylvania.  Between June 2003 and August 2003, the McCloskeys

and NovaStar exchanged information, sent emails, and carried on telephone conversations

in an effort to finalize the refinancing.  According to the McCloskeys, the parties agreed to

a clearly defined mortgage and NovaStar subsequently breached that contract.  In the

present motion for summary judgment, NovaStar contends no contract ever existed

between it and the McCloskeys.  At best, NovaStar claims, they were negotiating the

specific terms for a future contract.  In addition, NovaStar argues that the McCloskeys

cannot recover under their promissory estoppel and fraud claims because the McCloskeys

misrepresented their income during the application process.  For the reasons to be

discussed, I will grant summary judgment on the breach of contract claim but deny

summary judgment on the promissory estoppel claim and fraud claim.

I.    **BACKGROUND**[1]

On June 16, 2003, Krista Mayo, a NovaStar loan officer, called Richard McCloskey to inquire about his desire to refinance his mortgage.  Mr. McCloskey informed Mayo that he had been working with another finance company, Apex Mortgage.  Apex had offered the McCloskeys a refinance rate of 4 7/8% plus 1 7/8 points.  Mr. McCloskey indicated to Mayo that he would refinance with NovaStar if NovaStar offered them a better rate than Apex.

During the course of the conversation, Mr. McCloskey permitted Mayo to access his credit report to determine Mr. McCloskey's eligibility for NovaStar's products.  Mayo reviewed Mr. McCloskey's credit report and stated that his credit score was "excellent."  As a result, Mayo told Mr. McCloskey that he *qualified* for a "no-doc" Stated Income loan.[2]  According to Mayo, this type of loan was based on the mortgagor's net assets and did not require any proof or documentation of the mortgagor's income or cash flows.  The only conditions for closing on a Stated Income loan were (1) a verification of the borrower's assets and liabilities and (2) two appraisals of the property demonstrating its fair market value in excess of $1.4 million.

---

[1]As I am required to do for purposes of this motion for summary judgment, I have viewed all facts in the light most favorable to the plaintiffs.

[2]According to NovaStar's program manual, NovaStar's Stated Income loan is offered to "Borrowers who prefer to not provide documentation necessary to prove their income and/or cash flow." Def. Opp. to Pl. March 23, 2007 Mot. Compel, Ex. 1.  For self-employed Borrowers and W-2 wage earners, "the income stated in the Fannie Mae Form 1003 will be used to qualify the Borrower provided the income appears reasonable for the nature and length of employment."  Id.

Mr. McCloskey agreed to proceed with NovaStar's Stated Income refinancing because Mayo assured him that NovaStar could beat the Apex rate. Thereafter, Mayo walked Mr. McCloskey through a series of questions to ascertain the McCloskeys' assets and liabilities. The inquiry included a serious of questions regarding the McCloskey's major sources of income. Mayo also completed a loan application for the McCloskeys based on the information.

Later that same day, Mayo called Mr. McCloskey to inform him that he and his wife had been <u>approved</u> for a 30-year loan in the amount of $990,000 at a locked-in rate of 4 3/4% plus 1 3/4 points. Mayo stated that the locked-in rate was conditioned on the following: (1) a verification of the McCloskeys' assets and liabilities; (2) two appraisals of the subject property showing its value in excess of $1.4 million; and (3) a commitment from the McCloskeys that they would deal exclusively with NovaStar (which Mr. McCloskey agreed to).

On June 19, 2003, Mayo sent Mr. McCloskey a copy of the loan application for his signature. Prior to signing the application, however, Mr. McCloskey noticed several errors in the documents and contacted Mayo to discuss the mistakes. In particular, Mr. McCloskey was concerned that the Good Faith Estimate showed that the loan would cost 2 ½ points, rather than the agreed upon 1 3/4 points. Mayo responded to Mr. McCloskey by email and indicated she had to be "overly conservative to account for where the investors may require additional points." In addition, Mayo spoke with Mr. McCloskey on June

3

19th, acknowledged the mistakes, and told Mr. McCloskey to discard the application because they were proceeding with a Stated Income loan.

On June 26, 2003, Mayo and Mr. McCloskey exchanged a string of emails regarding NovaStar's commitment. Mr. McCloskey did not want to place two appraisals in NovaStar's name until the "commitment is firm." Mayo advised Mr. McCloskey that she heard from the appropriate vice president at NovaStar and "it looks like we are going forward as planned at 4.75%." Mr. McCloskey sought clarification and asked, "I trust the 4 3/4 rate is with 1 3/4 points, correct?" Mayo responded, "Yes, you are correct." Based on Mayo's confirmation of the rate and points, the McCloskeys placed the appraisals in NovaStar's name and notified Apex that they were withdrawing their refinancing with them. The appraisals were completed on July 16, 2003.[3]

On July 22, 2003, Mayo emailed and called Mr. McCloskey. Mayo emailed Mr. McCloskey the following: "I finally received a commitment from Underwriting for the rate we want, and it lists some conditions that I need your help in completing before we go to docs." One of the conditions was Mr. McCloskey returning a signed copy of the loan application. On the phone, Mayo asked Mr. McCloskey to sign and back date to June 18, 2003 a copy of the loan application in order to complete his file. Even though both Mr. and Mrs. McCloskey were obtaining the refinancing, Mayo told Mr. McCloskey that he

---

[3]Based on Mayo's advice, the McCloskeys paid for the appraisals to speed up the closing of the loan. NovaStar agreed to reimburse the McCloskeys the $850 they spent on the appraisals. The McCloskeys were not reimbursed.

should only sign the application.  Mayo indicated that a single applicant would expedite the application process.

On July 23, 2003, Mayo requested Mr. McCloskey to complete some additional steps before the parties could proceed to closing the loan.  These final steps included: (1) permitting NovaStar to pay off a e-Trade loan of the McCloskeys; (2) transferring their property insurance to name NovaStar as first mortgagee; and (3) providing documentation regarding the subdivision plan for the property.  The McCloskeys agreed to or performed these further requests.

On July 24, 2003, Mayo advised the McCloskeys that the loan commitment was good until August 16, 2003, but that closing had to be completed by August 11, 2003.

On July 31, 2003, Mayo contacted the McCloskeys to ask why their property tax bills for the several pieces of property they owned in Paoli, Pennsylvania did not list the subject property separately.  After contacting the county tax assessor, the McCloskeys explained to Mayo that despite their property being subdivided, Chester County did not provide separate tax bills.  Mayo accepted this explanation.

On August 5, 2003, Mayo notified Mr. McCloskey that she was being transferred to another department at NovaStar and she would no longer handle the McCloskeys' account. NovaStar did not replace Mayo with another Loan Officer.  The next day Mr. McCloskey received a phone call from a Sales Manager named Lee.  Lee informed the McCloskeys that they did not have a locked in rate, despite Mr. McCloskey's contentions to the

contrary.

On August 7, 2003, Mayo emailed Mrs. McCloskey to apologize for the difficulty she was encountering in finalizing the mortgage.  In the email she stated:

> Remember the conversation we had about all of the paperwork being "estimates".  That is across the board with lenders.  Because everything hinges on the way the market goes, all rates and fees have to be presented as an "estimate".  When I sold Richard the loan, I was under the impression that 4.75% was the rate that we could get, because that is what I was told. . . . [U]nfortunately, we were in the process of doing your loan when the rates when back up tremendously.

On August 11, 2003, Mrs. McCloskey spoke with Lee.  Lee insisted on an additional condition for closing — that the subject property be billed separately for taxes.  The McCloskeys hired an attorney and sent a letter to the county to satisfy NovaStar's request.

On August 19, 2003, NovaStar informed the McCloskeys that the refinancing was denied for two reasons: (1) the McCloskeys did not disclose the e-Trade loan, and (2) the McCloskeys failed to disclose four encumbered investment properties.  However, in the McCloskeys' dealings with Mayo, the McCloskeys informed NovaStar of both of these pieces of their financial picture.  In addition, the four investment properties were unencumbered.

On August 22, 2003, after numerous phone calls by the McCloskeys' to NovaStar, NovaStar's Vice President Ron Zaccaria called the McCloskeys to provide a new reason for the denial of their loan.  Zaccaria stated that NovaStar's Credit Committee did not

approve the loan.  On September 2, 2003, the McCloskeys received from NovaStar a

Statement of Credit Denial.  The statement stated NovaStar declined to refinance the

McCloskeys' mortgage because they had "excessive obligations in relation to income" and

"insufficient income for the amount of credit requested."  On September 4, 2003, Mr.

McCloskey contacted NovaStar in an attempt to obtain additional information regarding

the denial of credit.  He spoke with a NovaStar employee who stated that NovaStar's

computer system indicated his loan was approved.

    The events that occurred in the summer of 2003, and the McCloskeys' failure to

obtain the allegedly promised mortgage from NovaStar, led the McCloskeys to file suit

against NovaStar.  The following three remaining state law claims have been asserted

against NovaStar: (1) breach of contract; (2) promissory estoppel; and (3) fraud.[4]  The suit

was initially filed in the Chester County Court of Common Pleas and removed to this court

on March 11, 2005.  Since its removal, the case has taken a rather long and unorthodox

path to this summary judgment stage.  The parties attempted to both arbitrate and settle the

case.  Although the docket does not reflect a Rule 16 conference or a scheduling order, the

parties have conducted written discovery as evidenced by the various motions to compel.

No depositions, however, have been conducted.  Despite this limited discovery, NovaStar

filed a motion for summary judgment believing judgment should be entered in its favor as

a matter of law.  The plaintiffs disagree and have filed a response in opposition to the

---

[4]I previously dismissed the McCloskeys' claim under Pennsylvania's Unfair Trade Practices and
Consumer Protection Law.  See Docket No. 14.

summary judgment motion and a Rule 56(f) motion requesting additional discovery to establish the merits of their case.

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©.  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

The defendant bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  When the plaintiff bears the burden of proof on a particular issue at trial, the defendant's initial Celotex burden can be met simply by pointing out to the court that there is an absence of evidence to support the plaintiff's case.  Id. at 325.  After the defendant has met its initial burden, plaintiff's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  Summary judgment is appropriate if plaintiff fails to rebut defendant's assertions by making a factual showing sufficient to establish the existence of an element

essential to his case, and on which he will bear the burden of proof at trial.  <u>Celotex Corp.</u>

<u>v. Catrett</u>, 477 U.S. at 322.  The defendant must establish that there is no triable issue of

fact as to all of the elements of any issue on which it bears the burden of proof at trial.  <u>See</u>

<u>In re Bessman</u>, 327 F.3d 229, 237-38 (3d Cir. 2003) (citations omitted).

Under Rule 56, the court must view the evidence presented on the motion in the

light most favorable to the plaintiff.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255.  If

the plaintiff has exceeded the mere scintilla of evidence threshold and has offered a

genuine issue of material fact, then the court cannot credit defendant's version of events

against the plaintiff, even if the quantity of defendant's evidence far outweighs that of the

plaintiff's.  <u>Big Apple BMW, Inc. v. BMW of North Am., Inc.</u>, 974 F.2d 1358, 1363 (3d

Cir. 1992).

**III.    DISCUSSION**

A.    <u>Breach of Contract Claim</u>

1.    *Existence of Contract*

According to the complaint, NovaStar breached its agreement with the McCloskeys

to refinance their mortgage at the rate of 4 3/4% and 1 3/4 points.  NovaStar argues that

the McCloskeys fail to establish the existence of a legal contract.  NovaStar points to the

McCloskeys' response to discovery interrogatories that asked them to identify all

documents that reflect the alleged contract.  The McCloskeys produced only three

documents that do not contain the essential terms of the contract or reflect the intent of the

parties.  The plaintiffs dispute NovaStar's position.  According to the McCloskeys,

NovaStar, through Mayo, agreed to extend a refinancing loan to them upon the satisfaction

of certain conditions.

Under Pennsylvania law, an enforceable contract exists if: (1) the parties have

manifested an intent to be bound by the agreement's terms; (2) the terms are sufficiently

definite; and (3) there was consideration.  In re Estate of Hall, 731 A.2d 617, 621 (Pa.

Super. Ct. 1999).  See also Mazzella v. Koken, 739 A.2d 531, 536-37 (Pa. 1999) (noting

that in order to enforce an agreement "'the minds of the parties should meet upon all the

terms, as well as the subject-matter, of the [agreement].'" (citation omitted)).  "A contract

for the sale of land must be in such form which properly expresses the intention of the

parties and must be definite and certain as to all terms.'"  Golf View Office Campus P'ship

v. Resolution Trust Corp., No. 96-5597, 1997 U.S. Dist. LEXIS 15640, at *12 (E.D. Pa.

Oct. 2, 1997) (quoting Sw. Germantown Cmty. Dev. Corp. v. Concerned Neighbors of

Germantown, 598 A.2d 63, 64-65 (Pa. Super. Ct. 1991)).  Further, "'it is hornbook law that

evidence of preliminary negotiations or an agreement to enter into a binding contract in the

future does not alone constitute a contract.'"  Id. (quoting  Channel Home Ctrs. of Grace

Retail Corp. v. Grossman, 795 F.2d 291, 298 (3d Cir. 1986)).  See also Middleton v.

Realen Homes, 24 F. Supp. 2d 430, 435-36 (E.D. Pa. 1998).  In other words, before

preliminary negotiations ripen into contractual obligations, there must be manifested

mutual assent to the terms of a bargain.  Mazzella, 739 A.2d at 536-37.  Cf. Shovel

Transfer & Storage, Inc. v. Pa. Liquor Control Bd., 739 A.2d 133, 136 (Pa. 1999) ("If the parties agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date." (quotations and citation omitted)).  And when a party relies on the existence of an oral contract, it must be established by "clear and precise" evidence.  Geiger Assocs. Plumbing, Heating & Air Conditioning, Inc. v. Geiger Servs., Inc., No. 98-1315, 1998 U.S. Dist. LEXIS 6778, at *3 (E.D. Pa. May 14, 1998); see also Kurland v. Stolker, 533 A.2d 1370 (Pa. 1987) (stating party asserting oral agreement concerning title to real estate must prove the existence of an oral agreement "beyond a doubt").[5]

Here, the plaintiffs' tale demonstrates that they were engaged in negotiations with NovaStar about the refinancing.  However, the plaintiffs do not establish that an agreement concerning the refinancing of their home had been reached or that either party intended to be bound by the terms now suggested by the plaintiffs as the oral agreement.  During the initial telephone conversations on June 16, 2003, Mayo indicated to Mr. McCloskey that the McCloskeys were "approved" for a mortgage at the locked-in rate of 4.75% contingent on three things.  In other words, they qualified to receive the refinancing at the quoted rate if they satisfied all three conditions.  Mayo's statement did not give Mr. McCloskey the ability to accept a mortgage, i.e., the power to create a contract by making an acceptance

---

[5]The question of "whether an undisputed set of facts establishes a contract is one of law."  Buff v. Fetterolf, 215 A.2d 327, 330 (1995).  Here, NovaStar does not dispute the plaintiffs' account of the pertinent events and communications.

of an offer.  <u>Triffin v. Thomas</u>, 462 A.2d 1346, 1350 (Pa. Super. Ct. 1983) ("It is fundamental that for an agreement to exist there must be an offer and acceptance which signifies that there has been a 'meeting of the minds.'").  Mr. McCloskey does not contend that Mayo made a definitive offer to him.  Mayo simply outlined what was required in order for NovaStar to offer the desired loan to the McCloskeys.  Moreover, no where in his affidavit does Mr. McCloskey actually claim he accepted a particular, definitive offer from NovaStar to refinance his mortgage.

As the email exchanges and Mr. McCloskey's affidavit attest, the McCloskeys spent the weeks after the first phone conversation attempting to satisfy the conditions needed to qualify for the quoted mortgage.  The emails show "preliminary" negotiations, not a binding contract, as the parties worked towards the closing of the loan at a specific rate.  Prior to satisfying one of the required conditions, Mayo informed Mr. McCloskey that "we are going forward as planned at 4.75%."  Such a statement does not suggest a binding agreement between the parties.  It reflects two parties working towards a future contract.  In another exchange, Mayo discusses a Good Faith Estimate of the loan terms provided to the McCloskeys and states: "I am cushioning everything so that we can be presently surprised at closing instead of outraged."  Estimates and non-finalized terms portray the lack of an intent to be bound.  Again, the parties appear to be striving to enter a contract, with specific terms, at the closing date.

Once the McCloskeys satisfied the initial conditions, Mayo informed Mr.

McCloskey that she received "a commitment from Underwriting for the rate we want, and it lists some conditions that I need your help in completing before we go to docs."  While NovaStar may have determined that the McCloskeys qualified for a loan at a certain rate, Mayo did not present the McCloskeys with an offer to accept.  Rather, Mayo indicated that the parties can now proceed to closing the loan.  The parties' intent to enter a contract at the "closing" is supported by Mayo's July 24, 2003 communication.  On July 24th, Mayo informed the McCloskeys that NovaStar's commitment was good until August 16th and that the loan had to be closed by August 11th.  If the parties previously entered into a binding contract, NovaStar would not be able to place an expiration date on its commitment.  This was not a case of the parties agreeing to the essential terms and intending them to be binding at present, with the intent to adopt a formal document with additional terms at a later date.  See Flight Sys., Inc. v. Elec. Data Sys. Corp., 112 F.3d 124, 129 (3d Cir. 1997) (noting that the existence of a contract had been alleged because there was an offer and acceptance, i.e., a meeting of the minds, and "[t]he fact that the parties intended subsequently to execute a signed writing does not preclude a finding that a contract was formed"); Shovel Transfer & Storage, 739 A.2d at 136.

Even accepting Mr. McCloskey's version of the events of June and July 2003, the parties did not intend to enter an agreement to refinance the McCloskeys' mortgage until they held a "closing."  The parties never closed on the loan and, therefore, never entered into a contract.  Accordingly, the plaintiffs' fail to establish the existence of a genuine

issue of fact with respect to the intent of the parties and the plaintiffs' breach of contract claim must fail as a matter of law.[6]

The plaintiffs hope to save their breach of contract claim by categorizing the various conditions created by NovaStar as conditions precedent to a contract to extend the loan. The plaintiffs' own account of the events fails to establish a valid contract to provide the refinancing. The various conditions that NovaStar placed on the McCloskeys did not relate to NovaStar's duty to perform under a contract; rather, the conditions related to the McCloskeys' ability to qualify for a specific loan. Once the McCloskeys satisfied those conditions, NovaStar committed to refinancing the mortgage at the quoted rate. Unfortunately for the McCloskeys, the parties never closed on, and the McCloskeys never

---

[6]NovaStar also claims that the breach of contract claim cannot be sustained because it was fraudulently induced to enter into any alleged contract with the McCloskeys. NovaStar bases this claim on the McCloskeys' misrepresentation of their income. See infra Part III.B.1. If a party's manifestation of assent is induced by either a fraudulent *or* a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient. See Allegheny Int'l. Inc. v. J. Daniel Snyder, 954 F.2d 167, 178-79 (3d Cir. 1992) (emphasis added); Coll. Watercolor Group, Inc. v. William H. Newbauer, Inc., 360 A.2d 200, 206 (Pa. 1976) (noting that a "contract is voidable for fraudulent inducement 'where a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud'" (quoting RESTATEMENT CONTRACTS § 476 (1932))); RESTATEMENT (SECOND) OF CONTRACTS § 164. See also RESTATEMENT (SECOND) OF CONTRACTS § 162 (defining a fraudulent misrepresentation and a material misrepresentation). Fraud consists of anything calculated to deceive. Silverman v. Bell Sav. & Loan Ass'n, 533 A.2d 110, 113-14 (Pa. Super. Ct. 1987) (discussing the requirements to prove fraud). Fraud is proved when it is shown that the false representation was made knowingly, or in conscious ignorance of the truth, or recklessly without caring whether it be true or false. Id. And if a party has the power to avoid a contract due to fraud in making the contract, its refusal or failure to perform is not a breach. RESTATEMENT (SECOND) OF CONTRACTS § 385 cmt. a. See College Point Boat Corp. v. United States, 267 U.S. 12, 15-16 (1925); Mardell v. Harleysville Life Ins. Co., 31 F.3d 1221, 1231 n.16 (3d Cir. 1994). Here, assuming the existence of a contract, the McCloskeys' misrepresentation of their income could very well make the contract voidable by NovaStar, especially since the disparity between the McCloskeys' actual income and reported income was over twenty-thousand dollars, which appears to be at the very least reckless. See infra Part III.B.1. However, given that no contract existed between the plaintiffs and defendant, I do not need to decide the merits of this argument.

accepted, that commitment.  As the Pennsylvania Supreme Court recently noted: "'A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.'  'In order for an event to be a condition, it must qualify a duty *under an existing contract*.'"  <u>Shovel Transfer & Storage</u>, 739 A.2d at 139 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 224, cmt. c) (emphasis added) .  Here, the McCloskeys' loan qualification hinged on certain events; however, the satisfaction of those events did not give rise to any duty to perform on the part of NovaStar.  That is because no contract existed between the parties.  The events were not conditions because they were independent of an existing contract.

In addition, plaintiffs' request for additional discovery on this matter will not alter the outcome.  First, the McCloskeys' own account does not establish a contract.  Second, the only additional person that can shed light on the intent of the parties is Mayo and her deposition would not aid this court in its decision.  Mayo's position is adequately represented in the email correspondence discussed above.  In addition, Mayo's August 7, 2003 email, sent to the McCloskeys after NovaStar denied the loan, details Mayo's recollection of the events.  Mayo talks in indefinite terms and estimates — language not indicative of a firm, binding contract.

2. *Statute of Frauds*[7]

---

[7]"The Statute of Frauds is satisfied by the existence of a written memorandum signed by the party to be charged and sufficiently indicating the terms of the oral agreement so that there is no serious possibility of consummating fraud by its enforcement."  <u>Keil v. Good</u>, 356 A.2d 768, 771 (Pa. 1976). <u>See</u> 33 PA. STAT. ANN. § 1 (Pennsylvania's Statute of Frauds, which applies to all interest in land).

NovaStar also raises a Statute of Frauds defense to the breach of contract claim. NovaStar argues that under Pennsylvania law a mortgage agreement must be in writing and satisfy the Statute of Frauds and any alleged agreement between the McCloskeys and NovaStar is oral and outside the Statute.  The McCloskeys do not dispute that mortgage contracts fall under the Statute of Frauds.  See Eastgate Enters., Inc. v. Bank & Trust Co. of Old York Rd., 345 A.2d 279, 281 (Pa. Super. Ct. 1975) ("To be valid, a mortgage must be in writing.").  Rather, the McCloskeys contend that due to the circumstances surrounding the alleged agreement to refinance their mortgage the Statute of Frauds does not apply.[8]

Since I have determined that no contract existed, I do not need to reach the question of whether any exception to the Statute of Frauds applies to the facts of this case.

B.      Promissory Estoppel Claim

    1.    Unclean Hands Defense

In the alternative to their breach of contract claim, the McCloskeys allege that they

---

[8]McCloskeys argue that several "time-honored exceptions" to the Statute of Frauds apply to this case.  I note that several of the McCloskeys' arguments misstate or misunderstand the law.  First, the McCloskeys contend that an exception to the Statute of Frauds exist where the "acts and declarations of the parties" prove the existence of the agreement.  See Kurland v. Stolker, 533 A.2d 1370, 1373 (Pa. 1987).  Kurland discusses the requirements that must be met in order for a court to order specific performance of an oral contract for real estate.  A party must provide "indubitable proof" of the existence of the oral contract and may do so through evidence of the "acts and declarations of the parties."  In other words, the acts and statements of a party are evidence a party can use to prove an exception to the Statute applies.  Second, the McCloskeys argue that Mayo's deposition, and her likely admission of the existence of a contract between the parties, will eliminate the Statute of Frauds defense.  Although the admission of a defendant of a contract's existence in his pleadings or testimony will take a contract out of the Statute, Mayo is not a defendant or party to the contract.  See Eastgate Enters., Inc. v. Bank & Trust Co. of Old York Rd., 345 A.2d 279, 281 (Pa. Super. Ct. 1975); FED. R. CIV. P. 32; Advest, Inc. v. Kirschner, No. 92-6656, 1994 U.S. Dist. LEXIS 954, at *3-5 (E.D. Pa. Jan. 21, 1994).

16

detrimentally relied upon promises NovaStar made to refinance their mortgage.  NovaStar does not contest the merits of the promissory estoppel claim,[9] but raises the equitable defense of "unclean hands."  NovaStar contends that the promissory estoppel claim fails because any promise it made with respect to the refinancing was based on the McCloskeys' false representation of their income.  The McCloskeys argue that sufficient factual issues surround any alleged income misrepresentation that this court cannot grant NovaStar summary judgment based on this affirmative defense.

The parties do not dispute that the promissory estoppel claim is one that sounds in equity.  Thus, the equitable maxim that "he who comes into a court of equity must come with clean hands" applies.  A court can bar a plaintiff from recovering on an equitable claim "when 'some unconscionable act of [the plaintiff] has immediate and necessary relation to the equity that' the [plaintiff] seeks . . . ."  New Valley Corp. v. Corporate Prop. Assocs. 2 & 3 (In re New Valley Corp.), 181 F.3d 517, 525 (3d Cir. 1999) (quoting Keystone Driller Co. v. Gen. Excavating Co., 290 U.S. 240 (1933)).  See also Precision Co. v. Automotive Co., 324 U.S. 806, 814-16 (1945); Lucey v. Workmen's Comp. Appeal Bd., 732 A.2d 1201, 1204-05 (Pa. 1999) ("[Unclean hands] is a self-imposed ordinance that closes the doors of a court of equity to one tainted with iniquity or bad faith relative to

---

[9]Shoemaker v. Commonwealth Bank, 700 A.2d 1003, 1006 (Pa. Super. Ct. 1997) (stating that to maintain an action for promissory estoppel, a plaintiff must allege "(1) the promisor made a promise that he should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise").

the matter in which he seeks relief. . . .[I]t does require that [the plaintiff] shall have acted fairly and without fraud or deceit as to the controversy in issue.").  "The doctrine is not a matter of defense to the defendant.  Rather, in applying it courts are concerned primarily with their own integrity, and with avoiding becoming the abettor of iniquity."  Ne. Women's Center, Inc. v. McMonagle, 868 F.2d 1342, 1354 (3d Cir. 1989) (internal quotations and citations omitted).  "[T]he primary principle guiding application of the unclean hands doctrine is that the alleged inequitable conduct must be connected, i.e., have a relationship, to the matters before the court for resolution."  New Valley Corp., 181 F.3d at 525; see Ne. Women's Center, Inc., 868 F.2d at 1354 (noting that the same principle applies under Pennsylvania law).  Fraud, deceit, unconscionability, or bad faith on the part of the plaintiff can allow a court to invoke the unclean hands doctrine.  The Third Circuit has detailed the type of conduct that qualifies as unclean hands: "Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character.  Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor."  Monsanto Co. v. Rohm & Haas Co., 456 F.2d 592, 598 (3d Cir. 1972) (citing Precision Co., 324 U.S. at 814-16); see also Shapiro v. Shapiro, 204 A.2d 266, 268 (Pa. 1964) ("Application of the unclean hands doctrine is confined to willful misconduct which concerns the particular matter in litigation.").  The Third Circuit has suggested that a plaintiff's negligent acts are

insufficient for a court to utilize the doctrine.  See S & R Corp. v. Jiffy Lube Int'l., Inc., 968 F.2d 371, 377 n.7 (1992) (stating that the unclean hands defense would have been unsuccessful if asserted because neither fraud, unconscionability, or bad faith was alleged and that at best the plaintiff complains that the defendant was negligent).

In this case, factual issues remain regarding the willfulness of the plaintiffs' misstatement of their income.[10]  Without further discovery, this court cannot fairly exercise its discretion under the unclean hands doctrine.  Giving the McCloskeys the benefit of every doubt and crediting them with every possible cent of income, NovaStar has failed to demonstrate bad faith or misconduct on the part of the McCloskeys so as to bar their promissory estoppel claim.

Mr. McCloskey represented to Mayo that his and his wife's annual income was "in the ball park" of $200,000.  As paper discovery has borne out, the McCloskeys' actual income in 2003 was $177,697.[11]  While it is debatable whether $177, 697 is in the ball park of $200,000, the McCloskeys' account of events reveal that the numbers do not tell the entire story.  For example, the plaintiffs claim that Mayo guided Mr. McCloskey through the application process.  The application was completed over the phone and Mayo

---

[10]The borrower's income will almost always be relevant in the application for a mortgage loan, whether it is a "Stated Income" loan or otherwise.  That is because a loan by definition must be repaid.  Therefore, the misrepresentation of the McCloskeys' income is directly connected to the promissory estoppel claim at issue.  The question that is left to be resolved in applying the unclean hands defense is whether that misrepresentation was willful.

[11]This amount was calculated by adding the following numbers, each rounded to the closest full dollar amount: (1) Mrs. McCloskey's income of $38,931.00; (2) interest of $1,869.00; (3) Social Security income of $14,384.00; (4) dividends of $10,163.00; and (4) rental income of $112,350.00.

knew that Mr. McCloskey was basing the income information on his "recollection."[12]   I

acknowledge that several facts support NovaStar's position that the McCloskeys' income

misrepresentation was willful, especially Mr. McCloskey's verification of the couple's

income under penalty of criminal and civil liability when he executed the loan application

and returned it to NovaStar; however, Mayo had advised the McCloskeys that they had

been approved for the loan prior to the application being returned.  Therefore, I am not

comfortable prohibiting the promissory estoppel claim based on the record before me.  To

exercise this court's discretion under the unclean hands doctrine based only on numbers,

and without clear proof of willful deceit, would be an abuse of discretion.

### 2.   Statute of Frauds Defense

NovaStar also argues that under Pennsylvania law the Statute of Frauds bars

plaintiffs' claim for promissory estoppel.  The McCloskeys dispute NovaStar's

representation of Pennsylvania law.

In Pennsylvania, a mortgage is an interest in real property and it must satisfy the

Statute of Frauds.[13]   See Linsker v. Savings of Am., 710 F. Supp. 598, 600 (E.D. Pa. 1989)

---

[12]The defendant dedicates a portion of its unclean hand argument to the fact that the application
was in Mr. McCloskey's name and therefore, only Mr. McCloskey's income should be considered when
calculating the actual income.  While the loan application indicates that it only applies to Mr.
McCloskey, the plaintiffs claim that Mayo instructed them to submit the application only in Mr.
McCloskey's name, but to include the income of both Mr. and Mrs. McCloskey.  I have accepted this
contention as true, i.e., NovaStar knew that any income information provided by Mr. McCloskey and the
income information in the application represented the McCloskeys' joint income.  Therefore, any unclean
hands argument cannot be based on Mr. McCloskey including Mrs. McCloskey's income in the loan
application process.

[13]See supra Part III.A.2 n.7 (defining Pennsylvania's Statute of Frauds).

("'[A]n oral agreement to lend money to a borrower in consideration for a mortgage must be in writing pursuant to the statute of frauds.'" (quoting <u>Bozzi v. Greater Del. Valley Sav. & Loan Assocs.</u>, 389 A.2d 122, 123 (Pa. Super. Ct. 1978))); <u>Eastgate Enters., Inc. v. Bank & Trust Co. of Old York Rd.</u>, 345 A.2d 279, 281 (Pa. Super. Ct. 1975) ("To be valid, a mortgage must be in writing.").  A party cannot avoid the dictates of the Statute of Frauds by relying on an estoppel theory of recovery.  See <u>Polka v. May</u>, 118 A.2d 154, 156 (Pa. 1955) ("[T]he principle of estoppel may not be invoked against the operation of the statute of frauds . . . .").  However, Pennsylvania's Statute of Frauds only makes an oral contract for an interest in real property unenforceable; it does not void the contract.  See <u>Fannin v. Cratty</u>, 480 A.2d 1056, 1059 (Pa. Super. Ct. 1984)  "[The] statute of frauds has been construed as permitting recovery of damages for breach of an oral agreement to sell land.  Generally, the measure of damages in such a case is the money that was paid on account of the purchase and the expenses incurred on the faith of the contract. Where the oral agreement has been obtained by fraud, however, the buyer may recover as damages the loss of his bargain . . . ." <u>Weir v. Rahon</u>, 421 A.2d 315, 317 (Pa. Super. Ct. 1980).  <u>See also</u> <u>Polka</u>, 118 A.2d 154; <u>Fannin</u>, 480 A.2d 1056.  Therefore, a plaintiff is permitted to pursue a promissory estoppel claim even when the underlying promise is subject to the Statute of Frauds, but his recovery is limited to reliance damages in the absence of fraud. See <u>Josephs v. Pizza Hut of Am., Inc.</u>, 733 F. Supp. 222 (W.D. Pa. 1989).[14]  <u>See also</u>

---

[14]Any remedy ultimately granted for a successful promissory estoppel claim "'may be limited as justice requires.'"  <u>Green v. Interstate United Mgmt. Serv. Corp.</u>, 748 F.2d 827, 830 (3d Cir. 1984)

Green v. Interstate United Mgmt. Serv. Corp., 748 F.2d 827, 830 (3d Cir. 1984); Milandco

Ltd. v. Wash. Capital Corp., No. 97-8119, 2001 U.S. Dist. LEXIS 20770, at *24-25 (E.D.

Pa. Dec. 12, 2001); Burns v. Baumgardner, 449 A.2d 590, 595-96 (Pa. Super. Ct. 1982).

Turning our attention to the defendant's argument, plaintiffs' promissory estoppel

claim involving NovaStar's promise of a certain mortgage rate falls under the Statute of

Frauds.  The Statute of Frauds may prevent the specific enforcement of the promise, but it

does not bar the promissory estoppel claim itself.  At most, the Statute of Frauds limits the

relief available to the plaintiffs (and given the plaintiffs' argument that NovaStar's

conduct was fraudulent no restriction on recovery may apply).  Therefore, the plaintiffs

have the right to pursue further discovery on their promissory estoppel claim.

Accordingly, I will deny the defendant's motion for summary judgment with

respect to the promissory estoppel claim.

C.      Fraud Claim

NovaStar argues that the plaintiffs' fraud claim must fail because they cannot

demonstrate that they justifiably relied upon any alleged false misrepresentation made by

NovaStar regarding the refinancing.  Much like the unclean hands argument, NovaStar

relies on the McCloskeys' understatement of their income in the loan application process

to support its position.  NovaStar believes that the McCloskeys "cannot reasonably (or

fairly) contend that they justifiably relied on any representations made by NovaStar as to

---

(quoting RESTATEMENT (SECOND) OF CONTRACTS § 90) (noting that Pennsylvania has adopted the theory
of promissory of estoppel established by section 90 of the Restatement (Second) of Contracts).

its 'willingness or ability' to approve a loan when those alleged representations of 'willingness or ability' were induced by Mr. McCloskeys' false statement of this financial status." Def.'s Mem. Law Supp. Mot. Summ. J. at 15. The McCloskeys contend that, viewing the record in their favor, summary judgment is not appropriate at this point in the case. The plaintiffs argue that they were justified in relying on NovaStar's promised mortgage loan because of the circumstances surrounding Mr. McCloskey's income representation and Mayo's directives to Mr. McCloskey.

Under Pennsylvania law, "to recover on a claim of fraud, the plaintiff must prove by clear and convincing evidence six elements: 1) a representation; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) the resulting injury was proximately caused by the reliance." Viguers v. Philip Morris USA, Inc., 837 A.2d 534, 540 (Pa. Super. Ct. 2003) (citing Debbs v. Chrysler Corp., 810 A.2d 137, 155 (Pa. Super. Ct. 2002)). A recipient of a fraudulent misrepresentation of intention is justified in relying upon it if the existence of the intention is material and the recipient has reason to believe that it will be carried out. See RESTATEMENT (SECOND) OF TORTS § 544 quoted in Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Invs., 951 F.2d 1399, 1412 (3rd Cir. 1991).[15] In determining whether reliance is reasonable, the degree of sophistication

---

[15] "[I]t should be noted that a mere breach of good faith, or a broken promise to do or refrain from doing something in the future is not fraud, although 'a statement of present intention which is false

of the parties and the history, if any, behind the negotiation process are relevant factors.

See  Mellon Bank, 951 F.2d at 1411-12; Greenberg v. Tomlin, 816 F. Supp. 1039, 1056

(E.D. Pa. 1993).

Based on Mr. McCloskey's affidavit and the other information in the record before

me, NovaStar's intention to refinance at a certain rate was material to the McCloskeys'

decision to deal with NovaStar and the McCloskeys had reason to believe that a national

mortgage company would follow through with that commitment.  Although it appears that

the McCloskeys are well versed in real estate transactions based upon the several pieces of

investment property they own, the communications between the McCloskeys and Mayo

show a lack of emphasis on a Stated Income loan borrower's income.  Mayo implied that

the income of the McCloskeys was of minimal importance to the loan approval.  Mayo

was more concerned about the McCloskeys' assets and NovaStar only sought verification

of the McCloskeys' income after it had already made a promise to refinance the mortgage.

In addition, Mayo knew that the income information she collected from Mr. McCloksey

over the phone was an estimate and based upon Mr. McCloskey's memory.  This

bargaining history, viewed in the McCloskeys' favor, supports the McCloskeys' reliance

---

when uttered may constitute a fraudulent misrepresentation of fact.'"  Lind v. Jones, 135 F. Supp. 2d 616,
621 (E.D. Pa. 2001) (quoting Mellon Bank, 951 F.2d at 1409).  The McCloskeys fraud claim rests on
NovaStar's alleged misrepresentation of its intent to enter into a loan agreement with the McCloskeys at
the rate of 4.75% and 1 3/4 points.  The McCloskeys believe NovaStar was executing a "bait and switch"
tactic when it promised them the mortgage loan at the 4.75% rate, i.e., it promised the McCloskeys a low
rate in order to induce the McCloskeys to deal exclusively with NovaStar and once the McCloskeys
committed to NovaStar and had no other refinancing alternative, NovaStar raised the interest rate on the
loan.

on NovaStar's commitment to lend despite the McCloskeys' understatement of their income.

NovaStar would like this court simply to look at the discrepancy between the plaintiffs' stated income and actual income and find in its favor.  However, Mr. McCloskey reveals that there is more to this refinancing.  The tax forms and loan application cannot be viewed in isolation.  A borrower's misrepresentation of his income to a lender is a factor to consider when determining if it was reasonable for a borrower to rely on any refinancing commitment made by a lender, but it cannot be the only factor.

Therefore, I will deny NovaStar's request for summary judgment on the fraud count.  Additional discovery must occur.  Then, after the presentation of the plaintiffs' case at trial, this court can better examine the fraud claim as required by Pennsylvania law.  Lind v. Jones, 135 F. Supp. 2d 616, 621 (E.D. Pa. 2001) ("Pennsylvania law requires the trial judge to decide as a matter of law before he submits a case to the jury whether plaintiffs' evidence attempting to prove fraud is sufficiently clear, precise, and convincing to make out a prima facie case.").

### D.      Plaintiffs' Motion Pursuant to Federal Rule of Civil Procedure 56(f)

The plaintiffs moved for a continuance under Rule 56(f) of Federal Rule of Civil Procedure.  The plaintiffs filed a brief and an affidavit of counsel in support of their motion.  They requested the court to delay any ruling on the summary judgment motion until NovaStar produced certain e-mails and the McCloskeys had an opportunity to

conduct several depositions.  As I have decided the motion for summary judgment, this

motion is denied.  However, I will discuss briefly my reasons for not granting the motion.

Rule 56(f) provides:

> When Affidavits are Unavailable. Should it appear from the affidavits of a
> party opposing the motion that the party cannot for reasons stated present by
> affidavit facts essential to justify the party's opposition, the court may refuse
> the application for judgment or may order a continuance to permit affidavits
> to be obtained or depositions to be taken or discovery to be had or may
> make such other order as is just.

FED. R. CIV. P. 56(f).  According to the Third Circuit, a Rule 56(f) motion must go beyond

generalities and "must identify with specificity what particular information is sought; how,

if uncovered, it would preclude summary judgment; and why it has not previously been

obtained."  Lunderstadt v. Colafella, 885 F.2d 66, 71 (3d Cir. 1989).  See Insulation Corp.

of Am. v. Huntsman Corp., No, 98-6336, 2000 U.S. Dist. LEXIS 481, at *20-21 (E.D. Pa.

Jan. 18, 2000).

As evident from the discussion above, there was no need for this court to delay the

resolution of the summary judgment motion.  NovaStar sought summary judgment on the

promissory estoppel and fraud claims based on the McCloskeys' willful misrepresentation

of their income.  The affidavit of Mr. McCloskey provided the strongest evidence of the

intent of the plaintiffs and resulted in the denial of the motion for summary judgment on

those counts.  The additional evidence sought in the Rule 56(f) motion for the promissory

estoppel and fraud claims was cumulative or irrelevant.

With respect to the breach of contract claim, the plaintiffs failed to identify how any

of the proposed discovery would preclude summary judgment.  The breach of contract claim failed because the evidence clearly showed that the parties never manifested an intent to be bound.  Neither the deposition of Mayo nor NovaStar's internal email communications would have changed that result, especially since the McCloskeys did not even claim that they accepted any offer from NovaStar.  As for the deposition of Mayo, the McCloskeys sought to have Mayo testify about the emails discussed above and the existence of an agreement.  The McCloskeys failed to specify, as required by the cases interpreting Rule 56(f), what particular facts would have been uncovered by Mayo's deposition, beyond what is contained in the emails and Mr. McCloskey's affidavit.  See Chestnut Hill Acad. v. Graphic Arts Mut. Ins. Co., No. 4-1560, 2005 U.S. Dist. LEXIS 14776, at * 17-22 (E.D. Pa. July 22, 2005) ("The cases granting Rule 56(f) motions emphasize the importance of specificity on the part of the non-moving party with respect to both the facts it expects to uncover through additional discovery and the necessity of those facts to the defense of the motion.").  Moreover, the emails speak for themselves and reflect Mayo's view that the parties were working towards a future contract.  Likewise, any *internal* communications of NovaStar were irrelevant; they could not establish what was lacking — a manifestation of the parties' mutual assent to the terms of a bargain.  The plaintiffs were present and participated in all communications that could have created a binding contract; however, by their own account, no contract was formed.

Therefore, I declined to grant the plaintiffs' motion pursuant to Rule 56(f) and I

27

now deny it.

**IV.   CONCLUSION**

For the foregoing reasons, I will grant NovaStar's motion for summary judgment as to the breach of contract claim.  The parties did not intend to enter into a contract until they closed on the refinancing loan, which never occurred.  I will deny the summary judgment as to the promissory estoppel claim and fraud claim.

I will give the parties ninety (90) days to conduct any needed depositions and additional discovery on the remaining counts and the remaining counterclaim.  At the close of the ninety days, I will place this case in the court's trial pool.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RICHARD F. MCCLOSKEY and
ROSEMARIE K. MCCLOSKEY,          :          CIVIL ACTION
          Plaintiffs,                   :
                                   :
     v.                              :          NO. 05-1162
                                   :
NOVASTAR MORTGAGE, INC.,         :
          Defendant.                    :

## ORDER

**AND NOW**, this 21st day of August, 2007, upon consideration of defendant's

Motion for Summary Judgment (Docket No. 56), and the responses thereto, it is hereby

**ORDERED** that the motion is **GRANTED in part and DENIED in part**.  I will grant

the defendant summary judgment on the breach of contract claim, but deny summary

judgment as to the promissory estoppel and fraud claims.

      **IT IS FURTHER ORDERED** that the plaintiffs' Motion to Compel the

Production of Documents Withheld in Discovery and Motion Pursuant to Fed. R. Civ. P.

56(f) (Docket No. 69) is **DENIED**.

      The parties shall complete all discovery on the remaining claims and counterclaim

by November 20, 2007.  On November 20, 2007, the case shall be placed in this court's

trial pool.  Counsel, parties, and witnesses must be ready to start trial upon 72 hours

telephone notice.

BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.